Timothy J. Conway, OSB No. 851752
    Direct Dial: (503) 802-2027
    Email: tim.conway@tonkon.com
Michael W. Fletcher, OSB No. 010448
    Direct Dial: (503) 802-2169
    E-Mail: michael.fletcher@tonkon.com
Ava Schoen, OSB No. 044072
    Direct Dial: (503) 802-2143
    Email: ava.schoen@tonkon.com
Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
Main: 503.221.1440
Facsimile: 503.274.8779

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Van's Aircraft, Inc.,<br><br>　　　　Debtor. | Case No. 23-62260-dwh11<br><br>**DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION** |

I, Clyde Hamstreet, declare as follows:

1.　　I, Clyde A. Hamstreet, through Hamstreet & Associates, LLC, was retained by Van's Aircraft, Inc. ("Debtor") to provide financial and business advisory and consulting services to Debtor. Hamstreet & Associates, LLC's employment as chief restructuring officer of Debtor was approved by Court order on January 17, 2024 [ECF No. 67].

2.　　I am a Certified Turnaround Professional and have served in leadership positions of the Northwest and National Turnaround Management Associations and the Association of Turnaround Professionals. I have been nominated for turnaround practitioner of the year four times, winning the award in 1994, 2005 and 2011. In 2009, I was honored by the Northwest

Page 1 of 10 – DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-62260-dwh11　　Doc 138　　Filed 05/10/24

Chapter of the Turnaround Management Association "for [my] dedication and outstanding professional achievements in business restructurings and turnaround" at its 10th Anniversary Cross-Border Conference.

3. I have expertise in corporate finance, management, and governance, and have held management positions in many corporations, including Chief Restructuring Officer, Chief Executive Officer, President, Chief Financial Officer, and Director. I have successfully restructured large and mid-size companies and have led many initiatives to restore underperforming corporations to profitability, both in and out of Chapter 11. My experience includes the strategic repositioning of core operations, complex refinancing and investment arrangements, aggressive cost reductions, intensive management of working capital, and sales and divestitures. I have advised corporate boards on improving governance processes and creating more effective relations between board and management. I have extensive experience in bankruptcy and other legal settings, serving as an expert witness in numerous federal cases and multi-million dollar arbitration matters

4. I submit this declaration in support of Debtor's Memorandum in Support of Debtor's Plan of Reorganization and Response to Objections to Confirmation. If called as a witness, I would testify to the following facts, all of which are within my own personal knowledge.

5. Debtor is a kit aircraft manufacturer, founded in 1972 in Reedville, Oregon, by Richard "Van" Van Grunsven. The Van's RV series of aircraft are all-aluminum, low-wing monoplanes of monocoque construction. As of October 2023, over 11,000 RV kits have been reported as completed and flown by customers, with thousands more under construction, making the RV series the most numerous of all homebuilt aircraft.

6. Debtor is considered the leader in the homebuilt aircraft industry by independent sources and it has a very loyal base of followers, customers, and private pilots looking for reasonably priced, safe and reliable alternatives to more expensive certified aircraft.

Page 2 of 10 – DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-62260-dwh11    Doc 138    Filed 05/10/24

7. Debtor's aircraft factory is located in two buildings. The main building and corporate offices are in a 60,000 square foot facility located on approximately 8 acres; a nearby second building housing engineering and technical design teams, workshops and hanger space is located on a smaller parcel; both buildings are sited at the south end of the Aurora State Airport in Aurora, Oregon. Debtor currently has approximately 115 employees.

8. Upon the Effective Date of Debtor's Plan, Debtor will be managed by a Board of Directors comprised of Richard Van Grunsven, Cheryl Van Grunsven, Mikael Via, Don Eisele, and Rian Johnson. The board will not be compensated for their work as board members.

9. At the Petition Date, Debtor was party to 2,288 customer contracts. The pre-petition customer contracts kit contracts totaled 1,757 at pricing that Debtor could not perform. In turn, Debtor obtained court authority to reject the customer contracts unless the customers elected to enter into modified contracts with Debtor, which modified contracts included a higher purchase price and applied the full amount of previously remitted deposits and payments. Over 83% of customers elected to enter into modified contracts with Debtor including 1,331 kit orders and 445 engine orders. The Plan provides for Debtor to assume and fulfill all customer contracts in which the customer agreed to a modified purchase price and signed a modified agreement post-petition. These customers are reflected on Exhibit C to the Plan. As set out on Exhibit D to the Plan, 426 sales orders, belonging to 235 customers, are being rejected or terminated pursuant to the Plan because these customers did not elect to modify their contracts with Debtor. At least 110 of the 235 affected customers have filed proofs of claim to date. Pursuant to the Plan, affected customers who did not yet file a proof of claim will have 30 days after entry of the Confirmation Order to file a Rejection Claim.

10. Following are updates to the aforementioned Exhibits C and D, which were attached to the Plan:

a. The following customers previously listed on Exhibit D (customer orders rejected) to the Plan have elected to modify their contracts, and are now treated as listed on

Page 3 of 10 – DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-62260-dwh11    Doc 138    Filed 05/10/24

Exhibit C (customer orders assumed): Ronald Story (Sales Order No. 161441); Tyson Taylor (Sales Order No. 217024); Anton Kerscher (Sales Order No. 255985); Scott Pottle (Sales Order No. 177264); and Stuart Smith (Sales Order No. 203260).

    b.    The following customer was previously listed on Exhibit 2 to the Omnibus Motion to Reject Customer Contracts Unless Otherwise Agreed and Establish Procedures Therefore [ECF No. 9] but has elected to modify his contract, and is now treated as listed on Exhibit C (customer orders assumed): Randall Flagg (Sales Order No. 250057).

    c.    The following customer sales order is rejected and is now treated as listed as on Exhibit D (customer order rejected): Seth and Cassandra Peterson (Sales Order No. 253001).

11. The Plan provides for payment to Secured Creditors in the full amount of their Allowed Secured Claims over time, except as set forth and agreed to with respect to Class 2. Allowed Priority Claims for customer deposits will be paid the amount entitled to priority on the Effective Date or when the Claims are Allowed. Allowed General Unsecured Creditors will receive Pro Rata distributions of fixed amounts equal to the projected disposable income of the Reorganized Debtor over the next three years, which should result in payment of approximately 55% of their Allowed Claim amounts. All existing equity Interests will be cancelled.

12. During the course of the Bankruptcy Case, Debtor has continued business operations. With the large percentage of customers agreeing to modifications to their orders with price increases, the company is poised to begin operating profitably once it exits bankruptcy. The laser cut part dimple crack impact has been clearly defined and replacement parts are being provided to 40% of Debtor's customers and the remainder should be resolved by November. New orders are coming in with $2.4 million of deposits now held in the restricted account. The reorganization of the executive staff has been accomplished with Michael Via serving as CEO, Shawn Ell as COO and Jeff Allen as CFO.

13. During the course of the Bankruptcy Case and pursuant to Court authority, Debtor obtained post-petition loans from the Richard E. and Diane E. Van Grunsven Trust (the "Trust")

Page 4 of 10 – DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-62260-dwh11    Doc 138    Filed 05/10/24

in the total amount of $4 million ("Post-Petition Loans"). Pursuant to the Plan, the Trust will forego payment of its Post-Petition Loans and $3 million of secured pre-petition loans and convert the $7 million plus interest due thereunder to equity in Debtor. Debtor's business is unable to obtain traditional financing as it generates no account receivable base, and its large inventory stock has no value if Debtor is not able to remain in business selling its kits. As a result, it must rely on equity to fund its working capital, meet its financial obligations under the Plan, and support credit terms it needs from its vendors. Without the $7 million of equity provided by the Van Grunsven Trust, Debtor will not have the funds to operate and would be forced to liquidate with an estimated recovery for the General Unsecured Creditors of 4%.

14. I worked with Debtor's senior leadership and counsel to prepare the financial projections attached as Exhibit B to the Plan (the "Projections"). The revenue and expenses included in the Projections are based on historical and current data and informed assumptions as to Debtor's future revenue and expenses. The Projections are realistic and intended to be conservative. The Projections provide for the investment of a portion of its earnings back into its business in order to remain viable. In addition to competition from North American companies, Debtor will be facing competition from lower-cost producers from Europe, South Africa, and likely India and China. To remain competitive, Debtor needs to replace some of its very depreciated equipment, maintain and attract skilled employees, and invest in the integrated management of main business processes, including GAAP supported accounting, cost accounting, inventory control and scheduling. These are necessary investments for Debtor to remain a viable business and meet its Plan Projections. There is not sufficient capital to fund all the needs initially, so they are funded over three years by budgeting an annual reinvestment of approximately 20% along with some equipment financing to fund these costs. In my opinion, Debtor cannot risk the effort and cost of its reorganization without making these investments in operations.

Page 5 of 10 – DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-62260-dwh11    Doc 138    Filed 05/10/24

15. Debtor's accounting system is a good example of why a fully implemented modern accounting system is needed. In addition to the tens of thousands pieces of inventory to keep track of as it is made, labor, materials and cash receipts and payments needs to be properly recorded. Cash comes in as counter sales, internet sales and phone sales and written orders, thousands of transactions per month, varying from $10 for a tee shirt to $50,000 for an engine. Eight different people plus the web store system post cash, often in very different places.

16. Shortly before the Company filed bankruptcy its CFO and the head bookkeeper took their long-planned retirements. All payrolls had been done manually. An assistant in accounting took over payroll and engaged a payroll processing system but it was 3-4 months before proper payroll and withholding and 401k deposits were corrected. The books were out of balance by more than $3 million dollars prepetition. Over a thousand general ledger accounts had to be cleaned up and corrected. The result was wide swings in the monthly income and balance sheet as the errors (some of which were ten years old) were found and corrected. It was extremely difficult to produce accurate monthly financial statements. In January the books were so out of balance the statement couldn't be issued and we had to meet with the US Trustee to explain the situation and ask to submit a combined January and February as "year to date statement". (Unknown at the time part of the February income had been posted to January even though the books had been closed). That resulted in overstated January revenues against January only cost, so income was significantly overstated offset by February losses. In addition to a full-time temp, two Hamstreet professionals and Don Eisele the interim CFO spent much of their work week and many weekends trying to get the records in sufficient shape to produce the required monthly 425C reports with the UST. In summary, the first quarter of 2024's income statements are not an accurate reflection of Van's future earnings. For comparison purposes one has to remove the effect of non-cash adjustments and focus on operating income and expenses before most non-cash adjustments.

Page 6 of 10 – DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-62260-dwh11    Doc 138    Filed 05/10/24

17. Debtor's primary revenue sources for the next three years will come from the sale of its nine different kit airplanes, one model of production ready-to-fly plane, and one future back country airplane kit. In conjunction with its kits, Debtor also sells optional components including engines, propellers, avionics, and similar items needed for kit builders to have ready-to-fly planes.

18. Debtor has a sufficient backlog of business to carry it through 2024; by 2025, it is forecasted to have new orders at about the same level it enjoyed pre-Covid. Debtor has and will have adequate funds from operations and the Post-Petition Loans to continue operations and carry out the Plan. Accordingly, there is more than a reasonable probability that the Debtor will be able to perform pursuant to the Plan.

19. Debtor's intentions in filing bankruptcy were to preserve the value of its business, equipment, inventory and real property and repay creditors, to the extent possible.

20. As more fully detailed below, I believe Debtor has complied and the Plan complies with the applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), including, without limitation, that the Plan properly designates classes of claims, classifies only substantially similar claims in the same class, and provides adequate and proper means for implementation and payments to creditors.

21. The Plan has been proposed in good faith and not by any means forbidden by law. Debtor's Plan deals with creditors in a fundamentally fair manner by recognizing and preserving all rights of creditors and interested parties and proposing to pay all creditors to the extent possible based on Debtor's projected disposable income over the next three years.

22. Any payment made or to be made by Debtor for services or for costs and expenses in or in connection with this case, or in connection with the Plan and incident to this case, has been approved by, or is subject to the approval of, the Court as reasonable.

23. As set forth above and in the Plan at p. 15, Debtor has disclosed the identity of the individuals proposed to serve, after confirmation of the Plan, as a director, officer, or voting

Page 7 of 10 – DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-62260-dwh11    Doc 138    Filed 05/10/24

trustee of Debtor; and the appointment to, or continuance in, such offices of such individuals, is consistent with the interests of creditors and equity security holders and with public policy; and Debtor has disclosed the identity of any insider that will be employed or retained by Debtor after confirmation, and the nature of any compensation for such insider.

24. The requirement that any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of Debtor, approve any rate change provided for in the Plan, or that such rate change is expressly conditioned on such approval, is inapplicable to Debtor.

25. The Plan provides that with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the Plan or will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date, as reflected in the liquidation analysis attached as Exhibit A to the Plan.

26. Classes 1 and 3 are unimpaired. Classes 2, 4, 5, 6, and 8 are impaired. Based on voting, each impaired class has accepted the Plan. However, Class 8 is deemed not to have accepted the Plan because it is not receiving or retaining any property under the Plan on account of its interests.

27. The Plan provides that Administrative Expense Claims will be paid in full in cash on the later of the Effective Date or the date on which such Claims are approved by the Court, unless different treatment is agreed to.

28. Class 1 of the Plan provides for payment in full of all deposits to the extent permitted by Section 507(a)(7).

29. Class 4 of the Plan provides for payment in full of Allowed property tax Claims over a period not later than five years after the Petition Date and in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan.

Page 8 of 10 – DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-62260-dwh11    Doc 138    Filed 05/10/24

30. At least one class of claims that is impaired under the Plan has accepted the Plan; such determination is without consideration of any acceptance of the Plan by an insider.

31. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of Debtor, unless such liquidation or reorganization is proposed in the Plan. As set forth above, pursuant to Debtor's Projections and based on my familiarity with the facts, I believe Debtor will be able to perform its obligations under the Plan, including all of its payment obligations.

32. Debtor has paid all fees required of it pursuant to the Bankruptcy Code.

33. Debtor is not required to pay domestic support obligations; and is not a non-profit corporation or trust.

34. Debtor has paid all of its retiree benefits and the Plan provides for the continuation after its Effective Date of payment of all retiree benefits.

35. The Plan does not discriminate unfairly and is fair and equitable with respect to Class 8, the only impaired class that has not accepted the Plan.

36. The Plan commits Debtor's projected disposable income to be distributed over a three-year period and the value of the property to be distributed under the Plan is not less than such projected disposable income.

37. Based on the Projections provided with the Plan, Debtor will be able to make all of the payments under the Plan or, at a minimum, there is a reasonable likelihood that Debtor will be able to make all payments under the Plan and the Plan provides appropriate remedies to protect the holders of Claims or Interests in the event that the payments are not made.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF OREGON THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed this 10th day of May, 2024.

                                                      */s/ Clyde A. Hamstreet*
                                                     Clyde A. Hamstreet

Page 9 of 10 – DECLARATION OF CLYDE HAMSTREET IN SUPPORT OF MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND RESPONSE TO OBJECTIONS TO CONFIRMATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-62260-dwh11    Doc 138    Filed 05/10/24