| In re<br>**Van's Aircraft, Inc.**<br><br>Debtor | Case No. **23-62260-dwh11** |
|---|---|

CREDITOR'S RESPONSE

TO

DEBTOR'S CLAIM OBJECTION (OBJECTION) DATED JULY 31, 2024

Creditor, Eric Gettel, proceeding without counsel, for his Response to the Debtor's Objections to his Claim states:

BACKGROUND

Since 2016 I have been purchasing a series of kits from the Debtor, Van's Aircraft, which I am assembling into an aircraft eligible for licensing by the Federal Aviation Administration. The Debtor allows their customers to return an extra Center Section. A Center Section is a heavy, precision machined part that serves to tie the wings to each other and also to the fuselage. I am a customer who came into possession of an extra center section as I ordered the Quick Build version of the Fuselage Kit after having already purchased the standard version of the Wing Kit. I requested, received, and followed specific instructions from Van's Aircraft for the safe return of the extra center section. My account was credited $927.24 (the Credit). Since I intended to purchase the next kit in the series at a later date, I chose to have Van's Aircraft hold the Credit on account, essentially in trust, rather than ask for a refund. I subsequently ordered and paid-in-full a Finishing Kit which remained undelivered at the time Van's Aircraft sought Chapter 11 relief. The essence of my claim is that the Credit held in trust by Van's Aircraft was never used to my benefit, despite that I placed another order to which the Credit should have been applied.

A little about me. I am an experienced accounting controller having spent most of my career in manufacturing operations much like that of Van's Aircraft. I know how transaction processing systems work or should work. I am an MBA and a CMA (Certified Management Accountant). I am <u>not</u> a CPA (Certified Public Accountant) and

understand that I cannot offer an opinion to the general public about the quality of financial statements.

I will demonstrate that the OBJECTION is without merit because the Credit that Van's Aircraft held in trust exists as a part of the Debtor's books and records as evidenced by numerous documents and email conversations with employees of Van's Aircraft.

I will demonstrate that the OBJECTION is without merit because the OBJECTION implies that the repriced Finishing Kit contract also triggered forbearance of the Credit that Van's Aircraft held in trust when no such forbearance was discussed.

Details of my response to the OBJECTION are broken down into two parts by establishing: 1) The return of the Center Section is in fact a part of the Debtor's books and records, and 2) A modified purchase agreement is only a modified purchase agreement, not a resolution of my entire account.

I. **The return of the Center Section and subsequent credit is in fact a part of the Debtor's books and records.**

   A. Returning a Center Section was and continues to be an established business practice of Van's Aircraft. As published on vansaircraft.com:

      *Can I build my own wings and order a QB fuselage only?*

      *Yes. If you already have a wing kit, you can just return the fuselage center section that came with the wing kit to Van's with your QB Fuselage order. Center sections are interchangeable, but we'll need yours back to keep numbers even.*

   B. On September 20, 2021, I asked Van's Aircraft employee, Kelsey Hickman, how I should arrange for the return of the center section. She promptly responded with instructions to have a local UPS Store package it up and ship it to Van's Aircraft using Van's Aircraft account number.

   C. On January 29, 2022, I took a photograph of the Center Section as it lay on a bench in my workshop. Its serial number, 9-1817, is clearly visible. Van's Aircraft quality control system likely has a record of its disposition.

   D. On January 31, 2022, I informed Kelsey Hickman via email that I finally shipped the Center Section and included the UPS tracking number.

   E. On February 10, 2022, I received an email from Van's Aircraft employee, Bruce Bankhead, that my return had been processed. Attached was invoice number 006462 indicating that $927.24 was credited to my account.

   F. On August 25, 2022, I received via email an order acknowledgement and receipt of a 25% deposit for a Finishing Kit.

   G. On May 9, 2023, The Van's Aircraft Kit Status Team contacted me via email for final payment of $9,529.65 which kicked off a flurry of related emails:
      1. On May 16, 2023 I replied to the Kit Status Team:
         *Super excited to get the remainder of my project. Please apply credit balance from my account to this purchase approx $900. I'll be able to wire in the balance as soon as I get the adjusted number back.*

2. On May 17, 2023 Van's Aircraft employee, Matthew Taylor Boone responded (note that he corrects my approximate amount because he has access to the exact amount):
*Our system is a little funky, I cannot actually ADD the Credit to the order until the final invoice is made at shipment, but if you subtract $927.24 from the total owed, I will reflect on the order that we will use that credit towards the final invoice balance* 🙂

3. On May 17, 2023 I replied:
*As an accountant specializing in ERP systems, I understand.*

4. On May 17, 2023 Matthew Taylor Boone replied:
*I'm glad someone understands our suffering* 😉 *thanks!!*

H. On May 18, 2023 Van's Aircraft employee, Anne Bobbitt via email made final settlement of the transaction by attaching a Deposit Receipt showing $11,543.66 and stating, "We will use your credit for the balance. Thanks"

II. **A modified purchase agreement is only a modified purchase agreement, not a resolution of my entire account.**

   A. On December 18, 2023, Van's Aircraft offered a court authorized ultimatum ("revised offering") regarding the Finishing Kit I had originally ordered in August 2022 and made deposits thereon in August 2022 and May 2023. To the best of my recollection, the revised offering effectively offered 2 courses of action: 1) Agree to a $5,421.90 price increase, or 2) Get in line with other unsecured creditors for a refund of my deposit.

   B. I observed that the revised offering showed only the actual cash deposits made against the original contract, excluding the Credit that had been applied against the contract on May 18, 2023 by Anne Bobbitt. Knowing how accounting systems work, it is easy to see the Credit as a separate issue from the open contract. It had been effectively unapplied from the revised offering, returning the Credit to my account for use at a later date. Effectively, the Credit becomes a separate issue for the court to consider.

   C. Further observing that there had been no opportunity to question the amount of the deposit on the revised offering and knowing that a Debtor only has to respond to claims, I chose to both 1) Accept the price increase in the revised offering, and 2) file a claim for the Credit that Van's Aircraft was still holding in trust.

   D. At no point did the revised offering address the issue of the Credit. It would be inappropriate to stealthily commingle the issue of the Credit under the premise of a single restated purchase agreement unless both parties understood the greater scope. No scope inclusive of the Credit was identified within the restated purchase agreement. No forbearance of the Credit was requested and no forbearance of the Credit was granted.

   E. On February 23, 2024 the Kit Status Team asked for final payment of $6,349.14. Since I had an active claim for the Credit within the Chapter 11 process and there is an automatic stay against collecting debts, I did not press the issue of the Credit with the team.

   F. On March 4, 2024 Van's Aircraft employee, Victoria Leek sent me a receipt for the additional deposit showing a cumulative of $17,892.80 which is equal to the price of the revised offering.

G. On March 22, 2024, It took about 90 seconds for an ABF (a 3rd party trucking company often recommended or preferred by Van's Aircraft) employee to plop the Finishing Kit crate in my garage. Performance against the restated purchase agreement was completed save a couple of minor items on backorder.

CONCLUSION

I have shown that 4 employees of Van's Aircraft communicated with me about the origination and application of the Credit. The Debtor must concede, contrary to the OBJECTION, that the existence of the Credit is consistent with their books and records. The remaining question is the disposition of the Credit. The Debtor asserts in their OBJECTION that the restated kit purchase agreement implies forbearance of the Credit on Eric Gettel's account. No such forbearance was discussed and therefore could not have been granted. Eric Gettel's claim, #149, is valid and must be affirmed by the court.

**CERTIFICATE OF SERVICE**

I, Eric Gettel, hereby certify that on August 26, 2024, I served a copy of this CREDITOR'S RESPONSE TO DEBTOR'S CLAIM OBJECTION to the following:

1. Via email to:
   Ava Schoen at ava.schoen@tonkon.com

2. Via first class mail to:
   Tonkon Torp LLP
   ATTN: Ava Schoen
   888 SW Fifth Ave
   STE 1600
   Portland, OR 97204

3. Via fax to:
   503.274.8779
   ATTN: Ava Schoen
   Tonkon Torp LLP

| Eric Gettel | /s/ Eric Gettel |
|---|---|
| Printed Name | Signature |